**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**DEIDRA DENISE GALLEGOS,**

    **Plaintiff,**

**v.**                                                          **No. 21-cv-0050 SMV**

**KILOLO KIJAKAZI,**[1]
**Acting Commissioner of the Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Opposed Motion to Reverse and/or Remand [Doc. 25], filed on October 27, 2021. The Commissioner responded on January 21, 2022. [Doc. 29]. Plaintiff replied on February 9, 2022. [Doc. 30]. The parties have consented to my entering final judgment in this case. [Doc. 8]. Having meticulously reviewed the entire record[2] and being fully advised in the premises, the Court finds that substantial evidence does not support the ALJ's reasons for rejecting Dr. Hall's opinion. Accordingly, remand is warranted for reevaluation of Dr. Hall's opinion. The Court declines to pass on Plaintiff's challenge to the ALJ's evaluation of her self-reported symptoms at this time. The Motion will be granted, and the case will be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four) (2018).

---

[1] Kilolo Kijakazi is the current Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (2012).

[2] The medical-treatment notes found at Tr. 466–69 are not Plaintiff's records; they belong to someone else and are unrelated to this case.

**Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[3] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

---

[3] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the Listings[4] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the

---

[4] 20 C.F.R. pt. 404, subpt. P, app. 1.

3

national economy, considering her RFC, age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff applied for a period of disability and disability insurance benefits on September 27, 2018.  Tr. 64.  She alleged a disability-onset date of June 15, 2017.  *Id.*  Her claims were denied initially and on reconsideration.  *Id.*  ALJ Jim Frasier held a hearing on July 22, 2020, from New Orleans, Louisiana.  Tr. 9.  The hearing was held telephonically due to the COVID-19 pandemic.  Tr. 64, 9.  Plaintiff appeared telephonically with her attorney.  Tr. 64, 7, 9.  The ALJ heard testimony from Plaintiff and vocational expert ("VE") Patricia Ehlinger.  Tr. 64, 10–26.

The ALJ issued his unfavorable decision on August 11, 2020.  Tr. 73.  He found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022.  Tr. 66.  At step one, he found that Plaintiff had engaged in substantial gainful activity between June and August of 2017.  *Id.*  Because, however, there was a continuous period of at least 12 months during which Plaintiff had no substantial gainful activity, the ALJ proceeded through the sequential evaluation process.  *Id.*  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obsessive-compulsive disorder ("OCD"), bipolar disorder, and post-traumatic stress disorder ("PTSD").  Tr. 67.  The ALJ found Plaintiff's "pressure in the head" did not qualify as a medically determinable impairment.  *Id.*

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.  Tr. 67–68.  Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC.

Tr. 68–71.  The ALJ found that Plaintiff could perform unskilled work at all exertional levels but no public interaction.  Tr. 68–69.  Specifically, he found that Plaintiff:

> has the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] is limited to attend for two-hour period before and after regular breaks and lunch; understand, remember, and carry out simple instructions; occasional interaction with co-workers and supervisors but no interaction with the general public; can adapt to occasional changes; and occasionally take public transportation.

*Id.*

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a retail store manager or marketing specialist.  Tr. 71.  Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five.  Tr. 72.  He found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled.  *Id.*  Ultimately, the ALJ determined that Plaintiff had not been under a disability as defined by the Social Security Act and denied Plaintiff's claims.  Tr. 72–73.  The Appeals Council denied review on December 2, 2020.  Tr. 79–83.  Plaintiff timely filed the instant action on January 21, 2021.  [Doc. 1].

## Discussion

Substantial evidence does not support the ALJ's reasons for rejecting Dr. Hall's opinion.  The ALJ found that Dr. Hall's opinion was not consistent with the record and was not "supportable" by the medical evidence.  Tr. 70.  These reasons, however, are not supported by substantial evidence.

<u>How Medical Opinions Must be Weighed</u>

The ALJ evaluates the persuasiveness of medical opinions based on: (1) the degree to which the opinion is supported by objective medical evidence and supporting explanation; (2) how consistent the opinion is with other evidence in the record; (3) the source's treating relationship with the claimant (i.e., how long/frequently the source treated the claimant and for what purpose); (4) whether the source was specialized on the impairment on which he/she is opining; and (5) any other factor tending to support or contradict the opinion. 20 C.F.R. § 404.1520c(c)(1)–(5). "The most important factors . . . are supportability . . . and consistency." § 404.1520c(a).

Supportability—the first factor in determining persuasiveness of a medical opinion—examines how closely connected a medical opinion is to the evidence and the medical source's explanations. "The more relevant the *objective medical evidence* and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be." § 404.1520c(c)(1) (emphasis added). "Objective medical evidence means signs, laboratory findings, or both." 20 C.F.R. § 404.1502(f). The regulations explain "signs" as follows:

> Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

§ 404.1502(g).

Consistency—the second factor in determining persuasiveness of a medical opinion—compares a medical opinion to the evidence. "The more consistent a medical opinion(s) is with

the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be." § 404.1520c(c)(2).

> [O]ur use of the word "consistent" in the regulations is the same as the plain language and common definition of "consistent." This includes consideration of factors such as w*hether the evidence conflicts with other evidence from other medical sources* and *whether it contains an internal conflict with evidence from the same medical source*. We acknowledge that the symptom severity of some impairments may fluctuate over time, and we will consider the evidence in the claim that may reflect on this as part of the consistency factor as well. Thus, the appropriate level of articulation will necessarily depend on the unique circumstances of each claim.

Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5854 (Jan. 18, 2017) (emphases added).

In explaining how persuasive a medical opinion is, each of the ALJ's findings must be supported by substantial evidence. "[A]ll the ALJ's required findings must be supported by substantial evidence, and he must consider all relevant medical evidence in making those findings." *Grogan*, 399 F.3d at 1262 (citations and quotation marks omitted); *see generally, e.g., Langley*, 373 F.3d at 1116 (reversing ALJ's decision where, *inter alia*, the ALJ's reasons for rejecting medical opinions were not or did not appear to be supported by substantial evidence).

<u>Dr. Hall's Opinion</u>

Plaintiff had been working as a graphic designer and living in Colorado independently from her family in 2017 when she suffered a serious mental health crisis. *See* Tr. 452. She had been unable to sleep for months, despite efforts from her primary care physician, Lila Rosenthal, M.D., to find an effective treatment. Tr. 263–68. Her co-workers noticed her trouble and reached out to her family in New Mexico. Plaintiff's father and sister traveled from New Mexico to Colorado to help. After Plaintiff was found disoriented, psychotic, and behaving bizarrely near a lake, she was

taken to the emergency room. Tr. 273, 278 (emergency room records of June 12, 2017), *see* Tr. 452. She was admitted to an in-patient psychiatric facility for about ten days. Tr. 343–44 (discharge summary), 285, 287–88 (psychiatric assessment and mental status exam on June 13, 2017). After ten days, Plaintiff wanted to be discharged, although she was offered more time in the hospital. Tr. 344. Because she no longer met the "hold criteria," she was discharged at her own request. *Id.* ("[T]he short term cert she was on was dropped.").

Plaintiff's father helped her move back to New Mexico, where she began living on family land in rural northern New Mexico. *See* Tr. 453, [Doc. 25] at 4, Tr. 14. Plaintiff established primary care at Christus St. Vincent Medical Croup where her providers attempted to treat her continued mental health problems, including insomnia, fatigue, and memory and concentration problems, with several medications and a sleep study. Tr.402–15. Ultimately, they referred Plaintiff to psychiatry. Tr. 402–03.

Dr. Hall, a psychiatrist, began providing ongoing mental health treatment to Plaintiff in May of 2018. Tr. 452–54, 532–34 (duplicate). She authored her opinion about Plaintiff's functional abilities on May 22, 2020. Tr. 544. Dr. Hall explained that Plaintiff suffered from bipolar disorder, OCD, and PTSD. Tr. 550. She explained that Plaintiff had been only partially responsive to treatment. *Id.* She believed that Plaintiff was "better but significantly [s]ymptomatic." *Id.* She found that Plaintiff was "unable to cope with stress without having [a] significant increase of her [OCD] behaviors." Tr. 544. Dr. Hall explained that Plaintiff lived "alone in an isolated area to avoid having to interact with others as much as possible[,] as being around people increase[s] her symptoms significantly." *Id.* She found affirmatively that Plaintiff was not malingering. *Id.* Ultimately, it was Dr. Hall's opinion that Plaintiff would have "difficulty

8

working at a regular job on a sustained basis" and that, if she tried to work, her mental health problems would cause her to miss more than four days per month. Tr. 544.

Specifically, Dr. Hall opined that Plaintiff was seriously limited, but not precluded[5] in her ability to:

- Interact appropriately with the general public
- Use public transportation
- Maintain regular attendance and be punctual within customary tolerances
- Make simple work-related decisions
- Ask simple questions or request assistance

Tr. 545, 547.

She found Plaintiff was unable to meet competitive standards[6] in her ability to:

- Deal with stress of semiskilled and skilled work
- Maintain attention for two hours
- Complete a normal workday and workweek without interruptions from psychologically based symptoms
- Perform at a consistent pace without an unreasonable number and length of rest periods
- Accept instructions and respond appropriately to criticism from supervisors
- Get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes
- Respond appropriately to changes in a routine work setting

Tr. 545, 547.

---

[5] "Seriously limited, but not precluded means ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances." Tr. 546.

[6] "Unable to meet competitive standards means your patient cannot satisfactorily perform this activity independently, appropriately, effectively[,] and on a sustained basis in a regular work setting." Tr. 546.

Dr. Hall found that Plaintiff had no useful ability[7] to:

- Work in coordination with or proximity to others without being unduly distracted
- Deal with normal work stress

Tr. 547.

The ALJ applied the correct legal framework in weighing Dr. Hall's opinion. *See* Tr. 70. *See* 20 C.F.R. § 404.1527c(b), (c). He evaluated the opinion's supportability and consistency first. *See id.* He found that the opinion was "not consistent with the record" and not "supportable," and he rejected it. *Id.* Although these are legally proper reasons to reject Dr. Hall's medical opinion, *see* § 404.1527c(b), (c), they must be supported by substantial evidence, *see Grogan*, 399 F.3d at 1262. The Court does not discern substantial evidence to support either reason, as low as that bar is.

<u>There is not substantial evidence to support
the ALJ's finding that Dr. Hall's opinion was "not supportable."</u>

The ALJ rejected Dr. Hall's opinion as "not supportable." Tr. 70. He explained first that Dr. Hall's treatment notes reflected "many benign mental findings." *Id.* (citing Tr. 449 (note of Oct. 1, 2018), 508 (note of May 4, 2020), 510 (note of Mar. 2, 2020)). Second, the ALJ found that objective findings did not support Dr. Hall's conclusions, and specifically, there was "no medical evidence to support a need to miss more than four days of work a month." *Id.*

As to the first reason, there are, indeed, benign mental findings in Dr. Hall's treatment notes. For example, the notes cited by the ALJ show that Plaintiff was well-groomed and using good eye contact and a normal tone of voice. Tr. 449, 508, 510. But the Court fails to follow how

---

[7] "No useful ability to function, an extreme limitation, means your patient cannot perform this activity in a regular work setting." Tr. 546.

the presence of benign findings undermines Dr. Hall's opinion when those same notes contain findings that are not benign. For example, Plaintiff presented with anxious mood, retarded motor activity, and decreased concentration at each of these appointments. Tr. 449, 508, 510. These findings support Dr. Hall's opinion. *See* § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be."). Without articulating how he determined that these treatment notes did not support Dr. Hall's opinion, the Court cannot affirm. To be sure, "an ALJ is not required to discuss every piece of evidence[, but he] must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d at 1009–10 (citation omitted). The ALJ failed to discuss the probative, uncontradicted evidence he (apparently) rejected, i.e., the treatment notes that supported Dr. Hall's opinion.

Second, the ALJ found no objective evidence to support Dr. Hall's opinion. A psychological opinion "may rest either on observed signs and symptoms or on psychological tests." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). Dr. Hall lists about 18 signs and symptoms in support of her opinion.[8] Tr. 548–49. These signs and symptoms are consistent

---

[8] Dr. Hall's report identifies as Plaintiff's signs and symptoms:
- Decreased energy
- Feelings of guilt or worthlessness
- Generalized persistent anxiety
- Mood disturbance
- Difficulty with thinking or concentrating
- Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress
- Persistent disturbances of mood or affect
- Recurrent obsessions or compulsions which are a source of marked distress
- Seclusiveness or autistic thinking
- Emotional withdrawal or isolation

11

with her treatment notes. Tr 446–55, 475–82, 507–17. Further, her treatment notes also record the results of the psychological tests she performed. Tr. 454. For example, at Plaintiff's initial psychiatric evaluation on May 31, 2018, Dr. Hall made formal diagnoses of OCD; post-trauma response; PTSD; insomnia; and major depressive disorder, moderate, recurrent. Dr. Hall performed the PHQ-9 and assessed a score of "21; extremely difficult." She performed the Mood Disorder Questionnaire and assessed a score of "7; serious problem." Tr. 454; Tr. 534 (duplicate). These signs and symptoms and psychological tests are objective medical evidence that supports Dr. Hall's opinion.

There is no apparent way to reconcile the patent, objective evidence supporting Dr. Hall's opinion with the ALJ's finding that there is no such objective evidence. The ALJ explained that there was "no medical evidence to support a need to miss more than four days of work a month." Tr. 70. It is not clear what evidence the ALJ had in mind. Certainly, there is no x-ray or blood test to determine how many days per month an individual would miss from work due her psychological symptoms. The ALJ's finding—that Dr. Hall's opinion is not supportable, as objective findings do not support the conclusions—is not supported by substantial evidence.

---

- Motor tension
- Manic syndrome
- Deeply ingrained, maladaptive patterns of behavior
- Sleep disturbances
- Oddities of thought, perception, speech, or behavior
- Decreased need for sleep
- Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)
- Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week

Tr. 548–49.

<u>There is not substantial evidence to support
the ALJ's finding that Dr. Hall's opinion was not consistent with the record.</u>

The ALJ explains that Dr. Hall's opinion is not consistent with the record on the ground that Plaintiff is capable of performing her activities of daily living[9] ("ADLs").  Tr. 70 (citing Tr. 448[10] (Dr. Hall's note of Oct. 10, 2018); 528 (duplicate)).  The ALJ found that, at times, Plaintiff has had good grooming and hygiene, and at other times, she has had a disheveled appearance.  Tr. 68.  He found that she has needed help or encouragement to do things.  *Id.*  The ALJ found that Plaintiff could drive and shop in stores, prepare simple meals, wash laundry and clean, go outside daily, spend time with others, go the gym, and attend church.  Tr. 69; *see* Tr. 70, 71.  These activities are not *in*consistent with Dr. Hall's opinion.  Dr. Hall's opinion is that Plaintiff

---

[9] "*Activities of daily living* include, but are not limited to, such activities as doing household chores, grooming and hygiene, using a post office, taking public transportation, or paying bills." 20 C.F.R. pt. 404, subpt. P, app. 1, § 7.00(G)(5).

[10] Dr. Hall's note of October 10, 2018, reads, in pertinent part:
> ***Subjective***
> The patient is here for f/u of depression, OCD, PTSD, MDD.  Her condition is chronic and ongoing.  Location psychiatric.  Severity severe.  Hard to treat responding slowly to medications.
> 20 minutes were used in support of psychotherapy [about] the problems the patient is having, her daily routine and her plans.  Emphatic listening, invitation to elaborate, movement disorder.
> The patient states she feel calmer with the medication, but is still feeling down.  States she is feeling tired, is getting about 5 hours per night.  States the medication makes her tired.  She states she takes the sertraline in the morning.  States she feels like he[r] thoughts race.  States she has problems with completing satares [sic].  She has had that problem since 2014.  States [sh]e has had a very ha[r]d time sleeping at night.  Denied current nightmares.  States in the past she had nightmares.  States at times she would repeat things over and over.  She tend[s] to repeat things over and over.  Counts things but tries to stop it.  States she has some thoughts of dying, but diverts her attention.  Denied [visual/audio h]allucinations.  States she is keeping herself active, goes to walk daily with her aunts for an hour a day, and helps her aunt to cook, **<u>she is able to do her ADLs</u>**.  She went to human services and Social Security.  She is currently on Medicaid.  States she is having economical [sic] problems.
> The patient states she is medication compliant and has some sedation for medication.
> ….
> ***Mental/Functional***
> PHQ-9 is 19 with very difficult (moderate to severe depression)

Tr. 448 (emphasis added as bold and underline).

cannot tolerate the normal stress of work or being around others.  She opines that such stresses would increase Plaintiff's psychologically based symptoms and interrupt her work performance.  Plaintiff's ADLs—even as the ALJ finds them, which is less restrictive than Plaintiff claims—simply are not inconsistent with Dr. Hall's opinion.[11]  *See, e.g.*, *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (Nor may an "ALJ . . . rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain.").  Dr. Hall's opinion is not inconsistent with Plaintiff's ADLs.  The ALJ gives no other explanation as to how Dr. Hall's opinion is not consistent with the record, and none is immediately apparent.  There is not substantial evidence to support the ALJ's finding that Dr. Hall's opinion is inconsistent with the record.

## Conclusion

The Court finds that substantial evidence does not support the ALJ's reasons for rejecting Dr. Hall's opinion.  There is not substantial evidentiary support to find Dr. Hall's opinion inconsistent with the record.  Moreover, Dr. Hall's opinion is supported by both psychological tests and sign and symptoms, which is adequate to support a psychological opinion.  Accordingly,

---

[11] To illustrate, in *King v. Barnhart*, the Tenth Circuit Court of Appeals found that ADLs (consisting of housework, laundry, cooking, fishing, and shopping with family members, taking care of personal needs, creating art, studying and receiving a GED, watching television, making her bed, reading, and visiting family) did not "represent substantial evidence inconsistent" with her psychiatrist's opinion of mental limitations (e.g., marked impairment in ability to remember locations and work-like procedures; to understand, remember, and carry out very short and simple instructions or very detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; to be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others) resulting from the plaintiff's bipolar disorder, severe depression, and lack of response to treatment. 114 F. App'x 968, 971–72 (10th Cir. 2004).

remand is warranted for reevaluation of Dr. Hall's opinion. The Court declines to pass on Plaintiff's challenge to the ALJ's evaluation of her self-reported symptoms at this time.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Opposed Motion to Reverse and/or Remand [Doc. 25] is **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion. *See* § 405(g) (sentence four).

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**